UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOAQUIN ALCAUTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02069-TWP-MKK |
| | ) | |
| ARAMARK CORRECTIONAL SERVICES, LLP, | ) | |
| CENTURION HEALTH OF INDIANA, LLC, | ) | |
| TISCH THOMPSON, | ) | |
| DEBRA HALL, | ) | |
| ASHLY, | ) | |
| TODD SHIEFEL, | ) | |
| DALTON ALBRECHT, | ) | |
| DENNIS REAGLE, | ) | |
| KYLE MCKINNEY, | ) | |
| CATHLEEN SIMONE, | ) | |
| LORI FISHER, | ) | |
| S. ROBBINS, | ) | |
| NATE PULLEY, | ) | |
| BRANDON PHERSON, | ) | |
| JOHNATHAN JACKSON, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANT CENTURION HEALTH'S MOTION TO DISMISS**

Brought before the Court today is Defendant Centurion Health of Indiana, LLC's ("Centurion") Motion to Dismiss Plaintiff Joaquin Alcauter ("Mr. Alcauter") Third Amended Complaint pursuant to Rule of Civil Procedure 12(b)(6). (Dkt. 45). For the reasons explained below, the Motion to Dismiss is **denied.**

**I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

This case is one of a series of related cases brought by incarcerated pro se plaintiffs involving conditions of confinement during lockdowns at Pendleton Correctional Facility ("Pendleton") from October 2023 through January 2024 and again from July 2024 through August

1

2024. The Court's screening order allowed Mr. Alcauter to proceed on Eighth Amendment claims against Centurion based on the following allegations, summarized from Alcauter's Third Amended Complaint:

> Centurion has a practice of denying medical care during lockdowns, which meant that Alcauter could not receive healthcare during the relevant time period. [Dkt. 17] ¶ 144. Despite knowing about the health issues that Alcauter suffered because of the above-described conditions, Centurion and Reagle enforced the practice of restricting access to Centurion's nurses and the medical unit due to the lockdown. *Id.* ¶¶ 142–45. Alcauter alleges that these defendants intentionally denied access to punish him and other inmates and to hide their suffering and weight loss. *Id.*

(Dkt. 16 at 4). Mr. Alcauter's allegations proceeded under the theory of municipal liability articulated in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Id.* at 5.

Centurion responded to the complaint by filing a motion to dismiss Mr. Alcauter's claims under Federal Rule of Civil Procedure 12(b)(6). Mr. Alcauter responded to the motion, (dkt. 50), and Centurion filed a reply, (dkt. 51).

## II.  FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

To survive a Rule 12(b)(6) motion, the complaint must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court takes "as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *Roe v. Dettelbach*, 59 F.4th 255, 261–62 (7th Cir. 2023) (citation omitted)). But the Court is "not bound by legal conclusions couched as factual allegations." *Guerrero v. Howard Bank*, 74 F.4th 816, 819 (7th Cir. 2023).

As the Court explained in its screening order, the Court construes pro se complaints, such as Mr. Alcauter's Third Amended Complaint, liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). Indeed, the Supreme Court advised that "a document filed pro se is 'to be liberally construed' . . . and 'a pro se

complaint, however inartfully pleaded, *must* be held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (emphasis added)).

### III. DISCUSSION

Mr. Alcauter proceeds in this case on an Eighth Amendment *Monell* claim against Centurion. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (explaining that private companies that provide essential services to prisoners are treated as municipalities for the purposes of 42 U.S.C. § 1983 and can be sued when their actions violate the constitution). To successfully plead such a claim, Mr. Alcauter must first allege that he was deprived of a federal right. *Id*. Then, Mr. Alcauter must plead facts plausibly showing that Centurion's actions deprived him of the right at issue. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Centurion cannot be held liable under a theory of *respondeat superior*. *Id.* Thus, Mr. Alcauter must allege that Centurion, "either through an express policy or an implied policy of inaction, took deliberate action that was the moving force behind a constitutional injury." *Taylor v. Hughes*, 26 F. 4th 419, 435 (7th Cir. 2022) (quotation marks omitted). At the pleading stage, Mr. Alcauter does not need to specify a legal theory supporting his *Monell* claim. The Seventh Circuit has "'stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery.'" *Zemlick v. Burkhart*, 164 F.4th 1004, 1016 n.3 (7th Cir. 2026) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)).

Centurion argues that Mr. Alcauter fails to state a claim for the following reasons. First, he has not identified an underlying constitutional violation attributable to Centurion. (Dkt. 46 at 5–8). Second, Mr. Alcauter has not identified a Centurion policy, practice, or custom that was the moving force behind the constitutional deprivation, and relatedly, Mr. Alcauter has not shown that

Centurion had a widespread practice of violating his constitutional rights. *Id.* at 8–11. The Court rejects both arguments.

### 1. Mr. Alcauter Adequately Alleges that Centurion Violated His Eighth Amendment Right to Healthcare

Centurion first argues that the Third Amended Complaint fails to state a claim because it does not allege that Centurion violated Mr. Alcauter's constitutional rights. (Dkt. 46 at 5). Specifically, Mr. Alcauter has not alleged that a particular medical provider acted with deliberate indifference toward his objectively serious medical needs. *Id.* at 5–6. Mr. Alcauter responded that the Third Amended Complaint alleges that Centurion's decision to restrict access to the medical wing, despite being aware that he and others were suffering from injuries associated with the lockdown conditions (e.g., malnutrition, weight loss, nausea, panic, anxiety, and depression), violated his Eighth Amendment right to receive adequate medical care. Dkt. 50 at 5 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Mr. Alcauter's allegations could certainly be more detailed. But, at this stage in the case, he adequately pleads an Eighth Amendment violation.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle*, 429 U.S. at 103). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Third Amended Complaint satisfies the objective prong. Indeed, Mr. Alcauter alleges that he suffered from a litany of objectively serious medical needs due to the lockdown conditions—severe weight loss from malnutrition and starvation, nausea, stomach pains, various mental health issues, insomnia, headaches, bloody stools, sleep deprivation, etc. *See* dkt. 17 ¶¶ 23–24, 142–44. These are "physical injur[ies] that a reasonable doctor or patient would find important and worthy of comment or treatment" and they would "significantly affect[] an individual's daily activities." *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) (cleaned up). Importantly, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Here, delaying treatment for something like starvation, malnutrition, or blood pressure could lead to unnecessary pain and future injury. Thus, Mr. Alcauter's complaint adequately alleges objectively serious medical needs.

Second, Mr. Alcauter adequately pleads the subjective component. Although Centurion is correct that Mr. Alcauter may not simply make conclusory allegations and "threadbare recitals" of his cause of action, the Third Amended Complaint does allege facts supporting an inference of deliberate indifference. For one, Mr. Alcauter alleges that he and many other inmates complained to Warden Reagle and Centurion about the conditions of confinement and their alleged injuries, but Centurion's practices allowed nurses and doctors to refuse to treat his and the other inmates' conditions for months. (Dkt. 17 ¶¶ 23–24, 142–45). Mr. Alcauter also alleges that the "practice" at issue—the restrictions on access to the medical ward—was carried out for punitive reasons. He states that Centurion and Warden Reagle restricted the medical wing for punitive reasons and to purposefully deny inmates the ability to document their medical needs. *Id.* ¶¶ 144–45. This allegation is especially important since deliberate indifference entails the "unnecessary and wanton

infliction of pain." *See Estelle*, 429 at 104. Indeed, Mr. Alcauter's allegations do not permit an inference that the restriction was "outside of Centurion's control," as Centurion claims. *See* dkt. 46 at 10. Instead, Mr. Alcauter alleges that Centurion, along with Warden Reagle, purposefully restricted access to healthcare to cover up his and other prisoners' suffering. At this stage, these allegations suffice to establish that Centurion was deliberately indifferent to Mr. Alcauter's objective medical needs.

Additionally, Centurion is incorrect that Mr. Alcauter fails to allege an underlying Eighth Amendment violation because he does not allege that particular medical providers violated his Eighth Amendment right to adequate healthcare. In *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 375–78 (7th Cir. 2017), the Seventh Circuit found that plaintiffs may proceed on a *Monell* claim even when they do not allege that individual medical providers violated the Eighth Amendment. The court explained that "[i]t is somewhat unusual to see an Eighth Amendment case relating to medical care in a prison in which the plaintiff does not argue that the individual medical provider was deliberately indifferent to a serious medical need. But unusual does not mean impossible, and this case well illustrates why an organization might be liable even if its individual agents are not." *Id.* at 378 (internal citations omitted). "[I]f institutional policies are themselves deliberately indifferent to the quality of care provided, institutional liability is possible." *Id.*; *see also Murphy v. Wexford Health Sources, Inc.*, No. 22-2561, 2024 WL 962384, at *3 (7th Cir. Mar. 6, 2024) (unpublished) ("Contrary to Wexford's assertion on appeal, Wexford could be liable for an unconstitutional policy even if its clinicians are not individually liable for any constitutional injuries.") (citing *Glisson*, 849 F.3d at 278 and *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010)); *Thomas*, 604 F.3d at 304 ("[W]e find unpersuasive the County's argument

6

that it cannot be held liable under *Monell* because none of its employees were found to have violated Smith's constitutional rights.").[1]

### 2. Mr. Alcauter Alleged that Centurion's Policy to Restrict Access to the Medical Wing Caused the Constitutional Violation

Centurion also argues that Mr. Alcauter has not pled a particular policy, practice, or custom that was the moving force behind the deprivation of medical care. (Dkt. 46 at 8–11). Mr. Alcauter responded that the Third Amended Complaint's description of Centurion's decision to restrict access to the medical wing during the lockdown constitutes a "de facto" or informal policy or practice. (Dkt. 50 at 3–4). The Court agrees.

In a *Monell* claim, "[t]he central question is always whether an official policy, however expressed (and we have no reason to think that the list in *Monell* is exclusive), caused the constitutional deprivation." *Glisson*, 849 F.3d at 379. "It does not matter if the policy was duly enacted or written down[.]" In this case, Mr. Alcauter has alleged more than just a vague and

---

[1] The cases cited by Centurion do not contradict this principle. For example, in *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495–96 (7th Cir. 2021), the court affirmed the grant of summary judgment on a *Monell* claim because municipal employees did not violate the plaintiff's constitutional rights by entering her home and confiscating her cats. Importantly, *Gaetjens* does not comment on *Glisson* or state that *Monell* claims must allege that individuals personally violated the plaintiff's constitutional rights. Similarly, *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504–505 affirmed the grant of summary judgment and the denial of judgment as a matter of law on *Monell* claims because the individual police officers were found to have not been liable for violating the plaintiff's Fourth Amendment rights. Again, the thrust of the holding is that there was no underlying constitutional violation, not that a plaintiff must necessarily allege that individuals employed by a municipality violated his rights in order to sustain a *Monell* claim. *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining that *Monell* does not authorize damages against a municipality when no officer has violated the plaintiff's rights even if regulations authorized the violation of rights); *Hart v. Mannina*, 798 F.3d 578, 596 (7th Cir. 2015) (affirming dismissal of Fourth Amendment claims against supervisors where claims against subordinate officers were dismissed in an action alleging failure to supervise). In contrast, Mr. Alcauter has adequately alleged an underlying constitutional violation whereby Centurion's policy of restricting access to the medical wing during the lockdown deprived him of his right to adequate medical care under the Eighth Amendment. This is different than the regulation in *Heller* that merely authorized the violation of rights. Here, Mr. Alcauter is alleging that the policy *did* violate his rights. *See Thomas*, 604 F.3d at 304–05 (distinguishing *Heller*). Although this is not the most common kind of *Monell* claim, the Seventh Circuit has recognized that "an organization might be liable even if its individual agents are not." *Glisson*, 849 F.3d 378.

conclusory "culture of practices." *See* dkt. 51 at 6. He has alleged a Centurion policy of restricting access to the medical wing during lockdowns that led him to be deprived of medical care. Even construed as a "practice" or "custom," Mr. Alcauter has sufficiently alleged that the restriction was widespread, affecting inmates all over Pendleton for months in 2023 and 2024. Indeed, the Third Amended Complaint repeatedly references the facility-wide nature of the lockdown and the restriction as well as alleging that the conditions affected other inmates in his dorm. At the pleading stage, these allegations suffice to show that that decision to restrict access to the medical wing was "a true municipal or corporate policy at issue and not just a random event." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) (citing *Grieveson v. Anderson*, 538 F.3d. 763, 774 (7th Cir. 2008)). Furthermore, because prisoners have an Eighth Amendment right to adequate healthcare, a policy or practice of denying medical care during lockdowns could be plausibly inferred as in and of itself deliberately indifferent to the prisoner's medical needs. *See Dean*, 18 F.4th at 236 ("In some 'rare' cases, the risk of unconstitutional consequences from a municipal policy 'could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations.'") (quoting *Connick v. Thompson*, 563 U.S. 51, 64 (2011)). At this stage, Mr. Alcauter's allegation that Centurion and Warden Reagle restricted access to the medical wing adequately alleges that Centurion's action plausibly violated Mr. Alcauter's rights, which suffices to state a *Monell* claim.

Centurion also argues that Mr. Alcauter's claims are speculative and that he does not identify what specific medical treatment was actually denied. (Dkt. 46 at 11). As Mr. Alcauter argues, however, Centurion imposes a heightened pleading standard. (Dkt. 51 at 7). Mr. Alcauter does not have to provide detailed descriptions of Centurion's conduct or extrinsic evidence of his medical conditions and attempts to receive medical care to survive a motion to dismiss. *Childress*

*v. Walker*, 787 F.3d 433, 440–41 (7th Cir. 2015) ("To survive dismissal, a plaintiff's complaint need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . Specific facts are not necessary[.]") (internal quotations omitted); *see also Quinn v. Hardy*, 2013 WL 4826262 at *3–4 (N.D. Ill. Sept. 10, 2013) (denying defendants' 12(b)(6) motion where plaintiff pled that Wexford systematically ignored requests for medical treatment and had a policy of ignoring his and other inmates' requests since "[i]n the context of § 1983, a complaint need not meet a heightened pleading standard to survive a motion to dismiss."). Discovery might reveal that Mr. Alcauter did not suffer any of his claimed medical conditions, that Centurion did not restrict access to the medical wing or that any restrictions did not actually harm Mr. Alcauter, or that Mr. Alcauter did not complain to anyone about needing medical care. Nevertheless, at this stage, Mr. Alcauter has pled that he suffered from several untreated maladies for months due to Centurion's restrictions placed on the medical wing, and that Centurion knew about his and others' complaints and worked with Warden Reagle to restrict access to punish them. Taking Mr. Alcauter's allegations as true—as we must at this stage—these allegations suffice to state an Eighth Amendment claim against Centurion.

## IV.  **CONCLUSION**

For the above reasons, Centurion's Motion to Dismiss, Dkt. [45], is **DENIED**.

**IT IS SO ORDERED.**

Date: 6/22/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

9

Distribution:

JOAQUIN ALCAUTER
251315
PENDLETON – CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All ECF-registered attorneys of record via email